FAIR, J.,
for the Court:
¶ 1. Margaret Chapman spent eight years as a case manager for the Jackson County Drug Court. Her employment was terminated in November 2013, ostensibly for insubordination. She filed for unemployment benefits, which were awarded by the Mississippi Department of Employment Security claims examiner. The Jackson County Board of Supervisors appealed that decision. After a telephonic hearing where Chapman’s immediate supervisor did not testify, the MDES administrative law judge found that the performance-related issues cited in support of Chapman’s discharge did not amount to misconduct; Chapman’s testimony that she had attempted to address many of the concerns that were ultimately cited in her termination was largely uncontested. The MDES Board of Review adopted the findings of the ALJ and affirmed, and the Jackson County Circuit Court affirmed the Board of Review. We affirm as well.
FACTS
¶ 2. In the telephonic hearing before the ALJ, Joann Byrd, the drug court coordinator and the board of supervisors’ representative, testified that Chapman was discharged for three reasons:
(1) poor performance collecting fees from drug court participants,
(2) failing to report participant interviews to Judge Robert Krebs, and
*685 (3) attending events of other drug courts in the district without his permission.
Byrd’s testimony about these three areas of performance by Chapman was based on her understanding of criticism levied against Chapman by Judge Krebs, the drug court judge to whom Chapman was assigned and who had terminated her employment.
¶ 3. Chapman testified that, when counseled by Byrd and the judge in September 2013, before her November 2013 firing, she did improve her collections, prepared lengthy reports for the judge, discussed participant interviews with him, and obtained his permission to go to outside events, after being instructed to do so. She submitted that she had only been written up once in eight years of employment.
¶ 4. It was noted by the ALJ that Judge Krebs was not called by the County as a witness and did not testify either to contradict Chapman’s testimony or to affirm Byrd’s testimony. Byrd testified that it was the judge, and not her, who dismissed Chapman. Byrd flatly stated: “I did not dismiss her so I assume these were the reasons." (Emphasis added). Judge Krebs had “related these issues to [Chapman] [-] that he was unhappy with her performance or her failure to perform and it was these issues plus some other issues that he related to her on the day he terminated her.” To the ALJ’s question' of whether Chapman had “ever done the job to suit his expectations,” Byrd responded: “You would have to ask him that.”
¶ 5. In his order, the ALJ noted that Judge Krebs was not called as a witness, and found:
The claimant was required to collect fees from drug court participants. The claimant’s fee collection was less than the other four courts in her area. Fees are how the employer funds drug court. The claimant’s fee collection concerned the employer over funding and the claimant was asked to improve her collections. The claimant was issued the warning about fee collection in September 2013. The claimant improved her collections to the point she had the highest amount of fees collected in her area in September and October 2013.
With regard to notifying the judge of pending interviews:
The claimant failed to report to the judge less than half of the candidates to be interviewed for drug court in 2012. No warning was issued to the claimant advising her job was in jeopardy over failing to report the candidates to the judge.
The claimant’s judge was concerned he was not notified about information with regards to participants in drug court. The claimant was warned by the employer in September 2013[ ] to develop a form to assist in giving the judge information on participants. The claimant developed the form as instructed and the form allowed the judge to have the information needed for drug court participants.
To the third complaint of attendance by Chapman at unapproved activities, the ALJ found:
The drug court holds fun events for participants. Some of these events were during working hours. The claimant as a case manager went to some of these events. The claimant had permission from the judge to attend the events. No dates were available for the fun events the claimant attended in 2013.
¶ 6. The ALJ stated that in discharging his duties he considered the Mississippi Supreme Court’s holding in Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982):
*686 [T]he meaning of the term “misconduct,” as used in the unehaployment compensation statute, was conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior ■ which the employer has the right to- expect from .his employee. Also, carelessness and negligence-, of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered “misconduct” within the meaning of the statute.
He also considered MDES Regulation 308.00: .
Misconduct Defined
A. For purposes of Mississippi Code Section 71-5-513, misconduct shall be defined as including but not.limited to:
1. The failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed;
a. An individual shall be found guilty of employee misconduct for the violation of an employer rule only under the following conditions:
i. the employee knew or should have known of the rule;
ii. ' the rule was lawful'and reasonably related to the job environment and performance; and
iii. the rule is -fairly and consistently enforced.
2. A substantial disregard of the -em~. ployer’s interests or of the employee’s duties and obligations to the employer;
3.Conduct which shows intentional disregard — or if not intentional disregard, utter indifference — of an employer’s' interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of the employee; or
'4, Carelessness or negligence of such degree or recurrence as to demonstrate wrongful intent.
However, mere .inefficiency, unsatisfactory conduct,' failure to perform as the result' of inability or incapacity, a good faith error in judgment or discretion, or conduct mandated by a religious belief or the law is not misconduct. Conduct mandated by the law does not iridude court' ordered conduct resulting from claimant’s illegal activity; this may be considered misconduct[.]
¶ 7, The ALJ found:
The claimant was warned in September 2013[ ]-to improve her collections -and to provide.more information to the-judge about drug court participants. The claimant'- heeded the warning and improved her performance in these areas. Improvement in these areas show[s] the claimant is following instructions as opposed to being insubordinate.
The claimant advised the judge she was leaving for fun events and had his permission to do so. The claimant did fail to inform the judge of all of the participants. However, this occurred in 2012, and nothing was presented to show, it was a problem in 2013. This also shows improvement and adherence to instructions.
Insufficient evidence was presented by the employer to prove the claimant -was insubordinate or that her performance *687 on the job constituted work connected misconduct under Mississippi Code Section 71-5-513.
DISCUSSION
1. Substantial Evidence/Standard of Review
¶ 8. In its first issue, the' County contends that the Board erred in awarding Chapman unemployment benefits because it produced “substantial evidence” of misconduct. Ah employee who has been “discharged for misconduct connected with [her] work” is ineligible for unemployment benefits. Miss.Code Ann. § 71-5-513(A)(1)(b) (Supp.2015). The County presents a series of cases in which courts affirmed a decision of the MDES Board of Review in finding misconduct because the employer had presented substantial evidence of misconduct.
¶ 9. In these arguments, the County seems to misapprehend this Court’s standard of review, which is quite limited: “[An appeals court] will not disturb an administrative' agency’s decision unless it is 1) not supported by substantial evidence, 2) ... arbitrary and/or capricious, 3) beyond the scope or power granted to the agency, or 4) violated one’s constitutional rights.” Jones v. Miss. Emp’t Sec. Comm’n, 181 So.3d 1001, 1003 (¶9) (Miss.2016).
¶ 10. The County’s burden was hot only to produce substantial evidence of misconduct, but to prove by clear and convincing evidence that misconduct had actually occurred. Jackson County Bd. of Sup’rs v. Miss. Emp’t Sec. Comm’n, 129 So.3d 178, 183 (¶12) (Miss.2013). Thus, the question on appeal is not whether the County presented substantial evidence to support its case, but whether the Board— weighing all of the evidence presented by both sides—acted arbitrarily in finding that the County had failed to meet its burden of proof by clear and convincing evidence. See Mask v. Miss. Dep’t of Emp’t Sec., 80 So.3d 845, 847 (¶ 5) (Miss. Ct.App.2012).
¶ 11. “A rebuttable presumption exists in favor of the administrative agency, and the challenging phtty has the burden of proving otherwise.” ’ Sprouse v. Miss. Emp’t Sec. Comm’n, 639 So.2d 901, 902 (Miss.1994). The County (has failed to show error under its first issue.
2. Arbitrary and Capricious
¶ 12. In its remaining issue, the County contends that the decision of Board was arbitrary and capricious because of what it contends are defects in the reasoning of the ALJ, whose decision the Board adopted. In particular, the County cites to three instances in the.transcript, which is about seventy-five pages in ' length, where the ALJ asked questions about whether something had happened within the last eighteen months.
¶ 13. The County argues that this “suggests” the ALJ must have arbitrarily believed that any misconduct must have occurred within the last eighteen months, but there is nothing in the record to' support that conclusion. Nor is there any specific incident, that the- County argues the ALJ should have considered, but did not.
¶ 14. The ALJ was-tasked with determining the true reason for Chapman’s termination, and we can hardly call his interest in. recent, rather than remote, complaints or warnings about Chapman’s performance to be arbitrary or capricious. No error has been demonstrated under this issue.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS. OF *688 THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, JAMES, WILSON AND GREENLEE, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. ISHEE, J., NOT PARTICIPATING.